IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                                                            No. 16-cr-457

JOSEPH BALDONADO,

      Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING THE UNITED STATES' AMENDED PETITION FOR REVOCATION OF PROBATION

**THIS MATTER** comes before the Court following the United States' Amended Petition for Revocation of Probation (Doc. 65) alleging that Defendant violated three conditions of his supervised release. The Court has since held an evidentiary hearing on October 13, 2021 and closing arguments on November 24, 2021. Having considered the evidence, the oral and written arguments of counsel, the pleadings and the applicable law, the Court finds by a preponderance of the evidence that Defendant committed a Grade A violation of his supervised release by unlawfully possessing a firearm and controlled substances. Therefore, the Amended Petition for Revocation of Probation is hereby **GRANTED**.

### BACKGROUND

Almost six years ago, Defendant entered a guilty plea for possessing with intent to distribute 50 grams or more of a mixture and substance containing methamphetamine. *See* 21 U.S.C. § 841(b)(1)(B). After serving 60 months in prison, on September 4, 2020 Defendant started a term of supervised release—requiring his adherence to a number of conditions—set to expire on September 3, 2024. Specifically, he was required to: (1) not commit another federal, state, or local

1

crime; (2) refrain from any unlawful use of a controlled substance; and (3) not unlawfully possess a controlled substance or firearm.

At an evidentiary hearing held October 13, 2021, DHS Agent Shayne Beckford testified as to the incident leading to these revocation proceedings. On June 1, 2021, Los Lunas PD Detective Buster Whitley informed Beckford that Whitley received a dispatched 911 call from a man named "Robert Romero." Having known Defendant since childhood, Romero reported that Defendant called him a "bitch," pointed a handgun at him, and then fled at high speed in a white GMC Yukon. Soon thereafter, the police tracked down the white GMC Yukon and conducted a traffic stop. Defendant was the driver and only occupant of the white GMC Yukon.  The vehicle was registered to Defendant's wife, who later informed police that she had not driven it for some time, and that she was not in the vehicle on the day in question.

At the time police stopped the Yukon, there were two outstanding warrants for Defendant's arrest for separate and recent aggravated assault charges. With Romero's recent allegation and these two arrest warrants in hand, the police arrested Defendant and thereafter conducted an inventory search of the vehicle to prevent any loss of valuables, per department protocol. During this search, one of the officers informed Agent Beckford that they had found something of importance inside the vehicle in plain view, as described by the search warrant affidavit. Agent Beckford then approached the driver's side of the vehicle and saw the butt of a firearm and plastic bag of blue pills on the floor by the center console. Once impounded, police then obtained a warrant to search the Yukon.

Inside the vehicle, police discovered a Smith & Wesson .38 caliber handgun with blood stains on the handle. Coincidentally, Defendant's hand was bleeding at the time of his arrest. Furthermore, police recovered the following from inside the Yukon: a substance that tested

2

positive for heroin, 189 pills of fentanyl, a police scanner, a ledger with names and sums of money next to those names (located in the center console), a scale, and two cellphones. Agent Beckford could not testify as to where most of these items were found in the car. On Defendant's person, law enforcement found between $900 and $1,000 consisting of many $20 bills. Subsequently, Defendant was charged in state court with possession of a controlled substance, aggravated assault, and felon in possession of a firearm.

## DISCUSSION

Defendant conceded at the October 13 evidentiary hearing that he has unlawfully consumed controlled substances (a Grade C violation), as reflected by his five positive drug tests while on supervised release. Defendant contests, however, the first and third Grade A violations alleged in the Amended Petition for Revocation of Probation: that he committed an aggravated assault, and that he unlawfully possessed the controlled substance and firearm found in the vehicle. In situations such as this one,

> The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(4), (a)(5), (a)(6), and (a)(7) . . . revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a *preponderance of the evidence* that the defendant violated a condition of supervised release . . . .

18 U.S.C. § 3583(e)(3) (emphasis added). Accordingly, the Court assesses whether the United States has met its burden to establish that Defendant committed the two contested allegations by a preponderance of the evidence.

I. **The United States failed to meet its burden to establish that Defendant committed an aggravated assault.**

The only piece of evidence supporting the aggravated assault allegation is Agent Beckford's testimony that Mr. Romero told police that Defendant pointed a gun at him. When determining whether to admit hearsay statements in a supervised release revocation hearing, the Court must balance (1) the person's interest in the constitutionally guaranteed right of confrontation against (2) the government's "good cause" for denying it. *See United States v. Jones*, 818 F.3d 1091, 1099–100 (10th Cir. 2016). "[R]eliability is a very important factor in determining the strength of a releasee's confrontation right." *Curtis v. Chester*, 626 F.3d 540, 546 (10th Cir. 2010)

Defendant surely has a strong interest in ensuring Mr. Romero's reliability as a witness, given his hearsay statement is the only evidence supporting this allegation. He also has criminal history and potential bias worth exploring. Additionally, the United States did not provide an adequate explanation for Mr. Romero's absence at the October 13 evidentiary hearing. Therefore, both prongs weigh in favor of not admitting Mr. Romero's statement, and so the Court finds that the United States has failed to meet its burden on this alleged violation.

**II.      Defendant unlawfully possessed the controlled substances and firearm found in the vehicle.**

Since police discovered a handgun and narcotics inside the vehicle Defendant was driving before his arrest, the sole issue here turns on possession. "Actual possession exists when a person has direct physical control over a thing." *United States v. Benford*, 875 F.3d 1007, 1015 (10th Cir. 2017). "[C]onstructive possession exists when a person not in actual possession knowingly has the power and intent at a given time to exercise dominion or control over an object." *United States v. Little*, 829 F.3d 1177, 1184 (10th Cir. 2016); *Benford*, 875 F.3d at 1015 ("[T]he government [must]

show a nexus between the defendant and the firearm—specifically, that the defendant had knowledge of and access to the firearm.").[1]

Defendant argues the United States has not established by a preponderance of the evidence that he actually or constructively possessed the handgun or drugs found in the car. First, Defendant claims he does not own the vehicle, and the record before the Court indicates that the vehicle is registered in the name of Defendant's wife. Defendant points to a lack of evidence supporting what he describes as his wife's "self-serving hearsay statements" that she had not driven the Yukon for some time before Defendant's arrest. Second, Defendant argues that he was not aware of the handgun or drugs found in the car due to their concealment. Further, Defendant contends that Agent Beckford's testimony only establishes his *proximity* to the contraband, as he was unable to identify their exact location in the vehicle. This is all supported by the fact, Defendant argues, that Defendant did not evade police or make any "furtive" gestures, the lack of DNA evidence tying Defendant to the blood on the gun or the paper towel holding the heroin, and the lack of evidence tying Defendant's handwriting to that seen on the ledger.

The Court finds it more likely than not that Defendant actually—and in the alternative, constructively—possessed the firearm, heroin, and fentanyl found inside the vehicle. First, soon after learning that Defendant had allegedly pointed a gun in someone's face and fled in a white Yukon, police investigated this tip by stopping Defendant—the *sole occupant* of the Yukon when pulled over—and found a revolver inside. This corroborated Mr. Romero's tip that Defendant had

---

[1] Defendant's argument, explained below, hinges on the proposition that the car was jointly occupied by him and his wife. On this point, the Tenth Circuit Criminal Pattern Jury Instruction explains: "In the situation where the object is found in a place (such as a room or car) occupied by more than one person, you may not infer power and intent to exercise control over the object based solely on joint occupancy. Mere control over the place in which the object is found is not sufficient to establish constructive possession. Instead, in this situation, the government must prove some connection between the particular defendant and the object demonstrating the power and intent to exercise control over the object." 10th Cir. Criminal Pattern Jury Instruction § 1.31 (2021).

pointed a gun at him, and such corroboration increases the likelihood that Defendant possessed the gun.

Second, police also found inside the vehicle: 189 pills of fentanyl, a paper towel full of heroin, a ledger with names and dollar figures next to those names, a scale, a police scanner, two cell phones, and a number of $20 bills adding up to around $1,000 (found on Defendant's person). Agent Beckford testified to seeing the bag of pills and the butt of a firearm on the ground by the center console when conducting the initial inventory search—a fact Defendant conveniently avoids, while repeating that Beckford had no idea where police found all the items in the vehicle. To the extent that the police *could* have removed the plastic paneling to find the gun, the blood smeared on both the paneling and revolver matched Defendant's bloody hand at the time of his arrest, likely reflecting that Defendant had previously accessed the firearm. And the whole situation wasn't nearly as "coincidental" as Defendant suggests: Defendant had previously served a 60-month sentence for trafficking methamphetamine, had tested positive for use of controlled substances and was found here with a drug-trafficking starter kit. Third, Defendant's drug history is also particularly noteworthy. Defendant began using heroin and methamphetamine at age 10 and reported using heroin on a daily basis and methamphetamine about once per month until his incarceration in 2006. Doc. 34 at 17.[2] Additionally, according to the Amended Petition, Defendant has tested positive for drugs (including methamphetamine, amphetamine, marijuana, and cocaine) on *five* separate occasions while on supervised release. The first two occurred in 2020, the third on May 14, 2021, the fourth on May 19, 2021, and the fifth on May 26, 2021. In addition to his lengthy history with controlled substances, the close proximity (six days to be precise) between his fifth positive test and his arrest on June 1, 2021 increases the likelihood that Defendant actually

---

[2] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court takes judicial notice of Defendant's pre-sentence report.

possessed the gun and drugs found inside the Yukon. To say that he was completely unaware of their presence is unconvincing.

Finally, Defendant's attempt to shift the blame to his wife is similarly spurious. After Defendant's arrest, she informed police that she hadn't driven the vehicle for some time before Defendant's arrest. Defendant chose not object to her testimony, and the Court finds that her testimony cuts against Defendant's position that he was completely unaware of the contraband found in the Yukon.

Nor does the Court find persuasive any of Defendant's last-minute string of cases, most of which were decided decades ago outside the Tenth Circuit. *See United States v. Wight*, 968 F.2d 1393, 1396 (1st Cir. 1992) (finding constructive possession when handgun was located in partially-opened case by the defendant within his grasp, and the defendant played a principal role in the drug transaction); *United States v. Kelso*, 942 F.2d 680, 681 (9th Cir. 1991) (finding that car passenger did not constructively possess handgun behind the driver's seat when government presented no evidence to show that he owned the firearm or was aware of its presence); *United States v. Hishaw*, 235 F.3d 565, 572 (10th Cir. 2000) (finding no constructive possession when the government presented *no* evidence—much unlike the situation at bar—showing the extent of defendant's dominion or control over handgun when defendant was driving his friend's brother's car); *United States v. Whitfield*, 629 F.2d 136, 142–43 (D.C. Cir. 1980).

For these reasons, the Court finds by a preponderance of the evidence that Defendant actually possessed the gun and drugs found inside the vehicle. Even assuming the United States has not established actual possession, the nexus here is sufficiently strong to establish that Defendant constructively possessed the gun and drugs found inside the vehicle. *See United States v. Samora*, 954 F.3d 1286, 1290 (10th Cir. 2020); *United States v. Hishaw*, 235 F.3d 565, 571–72

(10th Cir. 2000). Consequently, the Court finds that Defendant has committed a Grade A violation of his supervised release and, therefore, the Amended Petition for Revocation of Probation (Doc. 65) is hereby **GRANTED.**

    **IT IS SO ORDERED.**

_____
**WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE**